JONES, JUDGE:
The important facts in this case are not in dispute. During the evening of March 1, 1970, rune boys escaped from the Industrial School for Boys at Pruntytown, in Taylor County. Three of the boys stole an automobile, owned by a Pruntytown resident, and drove it to Elkins. As the claimant, William O. Hogue, drove his automobile into one of the city’s street intersections, the driver-escapee turned the stolen car into the claimant’s lane of traffic and caused a collision. The es *133 capees were apprehended, and the driver later was convicted and sentenced to the State Penitentiary for the theft of the automobile. The claimant’s 1965 Mustang automobile was a total loss and the claimant sustained personal injuries, loss of earnings and damage to a television set, for all which he claims damages in the amount of $7*,003.30.
On the night of the escape approximately 40 boys were housed in the Administration Building, in one of the five dormitories located in separate buildings on the School grounds. The boys were locked in under the supervision of a “commander” or “cottage supervisor”, and they were showering and preparing for bed. Routinely they went to the clothes-room to obtain clothing for the following morning, which they were required to take to their sleeping quarters on the floor above. The interior of the clothes-room was out of sight of the “commander” and he heard nothing over the usual noise created by the large number of boys to call his attention to any irregular happening. However, word came to him from other inmates that the nine boys had raised the window in the clothes-room and had loosened and pushed out the heavy wire grating or screen securing the window and had dropped to the ground and escaped. Probably within ten minutes the “commander” went to a telephone in another building and called and notified the Assistant Superintendent, who in turn promptly notified the several law enforcement authorities in the area. A search in the vicinity of Pruntytown was carried on through the night by employees of the School.
An analysis of the nature and purposes of the Industrial School for Boys must be made and considered in order to arrive at a reasonable judgment based upon the facts presented in this case. 28-1-1 of the Code of West Virginia, in effect prior to the amendment of 1971 and at the time this claim arose, provides that the West Virginia Industrial School for Boys shall be exclusively charged with the care, training and reformation of male youths of the State committed to its custody. 28-1-5 of said Code provides that the State Commissioner of Public Institutions shall have authority to make such rules and regulations for the management and government of the West Virginia Industrial School for Boys, and the instruction, discipline, training, employment and disposition of the boys of the School as the Commissioner may deem proper. By orders of Courts of record of the State, the offending boys, ages 10 to 18, are committed to the School until they attain the age of 21 years, for purposes of restraint, discip *134 line, education and, hopefully, rehabilitation. They are all delinquents, have violated the law and many of them are incorrigible and of low mentality. However, the School is not a prison, there are no walls, security fences, bars, cells or armed guards. The School purports and tries to be a correctional institution. The average population is about 200, with such a turnover that more than 400 different boys are in custody during the period of a year. Of these, an average of 30 to 35 escape each year. The escapee who drove the stolen car into the claimant’s vehicle had escaped twice before and there still were no selective security measures nor any different treatment applied to him after his escapes. Eventually, the maximum security of the State Penitentiary for this 16 or 17 year old boy seems to have been the only solution our society, as presently constituted, could provide.
While it appears from the evidence that it may be relatively easy for a boy to leave the School grounds at many times, it is true that more strict security measures are in force at night. These boys were supposed to be “locked in” their quarters, and having locked the door, the question arises as to whether the “commander” or “supervisor” was negligent in having failed to properly secure the window or detect their efforts to escape. We do not believe so. The heavy iron screens or gratings were over the windows of all the buildings on the School grounds, and while they were not iron bars, they were considered to be effective and sufficient for an institution of this type. There was no evidence that the grating was defective or previously had been tampered with. The witnesses who described the window screen or grating all agreed that it would have been difficult to dislodge and none knew how it had been accomplished. We do not know how the grating or screen was torn loose or how long it took the boys to do it, so we cannot fully know how much opportunity the “commander” or “supervisor” had to detect the escape, but as he testified, “a fellow can’t be three places doing four things at the same time”. With 40 boys in his charge, it is not hard to believe that the “commander” did not hear the loosening of the window cover.
Considering all of the facts in this case, including the nature, purposes and prescribed procedures of the institution involved, and the law applicable thereto, the Court is of opinion that the claimant has not established negligence on the part of the respondent’s employee. While the claimant’s damages are real, substantial and unfortunate, without proof of negligence as the proximate cause of the claimant’s *135 loss, this Court may not invoke the conscience and resources of the State to redress another’s wrong.
Accordingly, the Court is of opinion to and does hereby disallow this claim.
Claim disallowed.